UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN STEPHEN HAZELL, JR., an individual, and C.H., a minor,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>BNSF RAILWAY COMPANY, a Delaware corporation; and JOHN DOES 1-10, individuals,<br><br>　　　　　Defendants. | Case No.  2:23-cv-00474-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Plaintiffs' Motion in Limine to Exclude John Hazell's

Criminal Background and Prior Drug Use (Dkt. 47). For the reasons described

below, the Court will partly grant and partly deny the motion.

## BACKGROUND

The facts have been described in detail in previous rulings and will be

repeated here only briefly. *See* Dkt. 43. This case stems from an interaction on

February 28, 2022, between Adam Bennett and BNSF Special Agent Daniel

Mattson. After catching Bennett trespassing on the railroad, Special Agent Mattson

issued a ticket rather than performing a custodial arrest, though Bennett had an

active warrant and was known to have "violent tendencies." *See Ex. B at 3*, Dkt.

23-3. A few hours later, Bennett set fire to a barn and killed the owner, Dennis

Rogers. Mr. Hazell saw the fire while driving and stopped to provide help. Bennett shot him in the leg before being apprehended by law enforcement.

Mr. Hazell and his minor daughter, C.H., then filed suit against BNSF Railway. The Court dismissed several claims at the summary judgment stage but allowed the plaintiffs to proceed to trial on the claims of negligence and loss of comfort, society, or companionship. The parties are now engaged in discovery on the issue of damages, which gave rise to the present motion in limine.

Mr. Hazell seeks to exclude evidence of his alleged drug use and past criminal charges. He has a number of old criminal arrests and convictions, including drug convictions in 2002 and 2006 that each resulted in a sentence of sixteen months in prison, and an arrest and possible conviction for felony theft and contempt of court in 2017. Additionally, after the February 28 shooting, law enforcement found a syringe with methamphetamine, which they linked to Mr. Hazell through DNA testing. In a subsequent interview with the Kootenai County Sheriff's Office, Mr. Hazell admitted that the syringe was his and that he used it for methamphetamine. He now argues that the above is inadmissible under FRE 401, 402, 403, 404, 608, and 609.

## LEGAL STANDARD

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108,

1111 (9th Cir. 2009). Though not expressly authorized in the Federal Rules of

Civil Procedure or Federal Rules of Evidence, motions in limine are well-

recognized in practice. Their key function is to "exclude prejudicial evidence

before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40

(1984). Judges have broad discretion in such rulings, and they are inherently

provisional. *See id.* at 41-42.

## ANALYSIS

Mr. Hazell makes several related arguments for inadmissibility. Most

broadly, he contends that evidence of his drug use and criminal history is irrelevant

and unduly prejudicial. He also argues that this constitutes improper character

evidence under Rule 404(b)(1). Finally, he claims that evidence of prior criminal

convictions is inadmissible for impeachment purposes under Rules 608 and 609.

The Court will consider each in turn.

### 1. Relevance and Prejudice

The analysis will begin with Rules 401 and 403. Evidence is relevant if it

has "any tendency" to make a fact of consequence "more or less probable than it

would be without the evidence." Fed. R. Evid. 401. This analysis is somewhat

difficult at this stage because BNSF has not explained how it might wish to use

Mr. Hazell's criminal background and alleged drug use—a reasonable omission

since the deadline for discovery on damages is not until December 4, 2025. That

said, the evidence seems irrelevant to the question of liability. This case is unusual in that Mr. Hazell's own actions on February 28, 2022, are not particularly important. The claims hinge on the interaction between Bennett and Special Agent Mattson, and Mr. Hazell's possible methamphetamine use has nothing to do with Special Agent Mattson's duty to arrest a third party. Likewise, Mr. Hazell's criminal history is beside the point.

There is a much stronger case that the evidence is relevant for assessing damages, and this appears to be the parties' focus. An ongoing methamphetamine problem could, for example, impact Mr. Hazell's economic losses from the shooting. Likewise, for C.H.'s claim, "evidence of prior drug use could be relevant to damages when a Plaintiff is claiming loss of services, companionship, comfort, [and] protection" due to a family member's injury. *Maddow v. City of Sandpoint*, No. 2:16-cv-162-BLW, 2019 WL 3538949, at *4 (D. Idaho, Aug. 1, 2019); *see Estate of Casillas v. City of Fresno*, No. 1:16-cv-1042, 2019 WL 586747, at *3 (E.D. Cal. Feb. 13, 2019).

But this is not the end of the analysis. The Court may exclude relevant evidence if the probative value is substantially outweighed by a danger of unfair prejudice. Fed. R. Evid. 403. Here, evidence of drug use and criminal history is marginally relevant but highly prejudicial. *See Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 602 (9th Cir. 2016). This Court has excluded such evidence under

similar circumstances, *see Maddow*, 2019 WL 3538949 at *3, and concludes, preliminarily, that the same course is appropriate here.

That said, district courts are decidedly mixed on this issue. As BNSF points out, several courts have admitted evidence of drug use and past incarceration for proving damages. *See Estate of Casillas*, 2019 WL 586747, at *3; *Silva v. Chung*, No. 15-00436, 2019 WL 2292073, at *6 (D. Haw. May 29, 2019); *Castro v. County of Los Angeles*, 2015 WL 4694070, at *7 (C.D. Cal. Aug. 3, 2015).[1] The Court is open to revisiting this issue once the nature and form of the evidence becomes clearer. As guidance for the parties, the Court would only envision permitting such evidence if Mr. Hazell's drug use is fairly recent, has some likelihood of recurring, and would have an impact on his ability to obtain the kind of jobs which his economist relied upon in developing a future lost wages study.  Additionally, the evidence would certainly be admissible for impeachment purposes if Plaintiffs opened the door to it, for example by suggesting that Mr. Hazell was a particularly upstanding citizen.

For these reasons, the present ruling on admissibility does not mean that the disputed evidence is outside the scope of discovery. The Court cannot perform a

---

[1] However, one of the cases cited by BNSF appears to have nothing to do with the admissibility of evidence of drug use or criminal history. *See Jeffries v. United States*, No. C08-15-14RSL, 2009 WL 3151030 (W.D. Wash., Sept. 28, 2009). The Court will assume that this is a human oversight and not another example of lawyers' irresponsible use of generative AI.

full Rule 403 analysis without knowing the specific content of the evidence. Although BNSF obviously may not use the discovery process to unduly embarrass Mr. Hazell, *see* Fed. R. Civ. P. 26(c)(1), cutting off the inquiry entirely would put the cart before the horse.

### 2.  Character Evidence

Plaintiffs next point out that Mr. Hazell's drug use and criminal history cannot be used as evidence that he acted in accordance with a particular character trait during the shooting. *See* Fed. R. Evid. 404(a). Frankly, both parties' briefing on this front is difficult to follow. Because Mr. Hazell's actions are not really at issue here, the Court does not understand why BNSF would want to use this evidence to prove Mr. Hazell's behavior or motive. BNSF does not appear to dispute this underlying point, so the Court will assume the issue is moot.

### 3.  Impeachment Evidence

The final question is the admissibility of Mr. Hazell's past criminal convictions for impeachment purposes.

Under some circumstances, past criminal convictions are admissible to attack a witness's character for truthfulness. Fed. R. Evid. 608(b). Importantly, this applies only to criminal convictions—not arrests—punishable by more than one year in prison. For convictions less than 10 years old, the evidence must be admitted unless its probative value is substantially outweighed by the danger of

unfair prejudice. Fed. R. Evid. 609(a)(1)(A). For convictions more than 10 years old (meaning more than 10 years have passed since either the conviction or release from confinement, whichever is later), the evidence is admissible only if its probative value substantially outweighs its prejudicial effects. Fed. R. Evid. 609(b). In other words, there is a presumption of admissibility for convictions within the past 10 years, and a presumption of inadmissibility for anything older.

This 10-year rule knocks out the vast majority of Mr. Hazell's alleged criminal history (some of which, like the traffic violations, would likely not be admissible anyway). Although the record on those convictions is not fully developed, drug convictions from the late 1990s and early 2000s are highly prejudicial and, at best, marginally probative of truthfulness. These are inadmissible. The July 2015 domestic violence charge will also presumably be outside the 10-year window by the time we get to trial. Moreover, it is not clear that Mr. Hazell was even convicted of domestic violence for that incident. The declaration describes it only as an "arrest" and does not indicate any punishment that followed. The Court thus preliminarily finds that it is inadmissible for impeachment purposes—though the analysis will change if it turns out that Mr. Hazell spent several years in prison for it.

This leaves the felony theft / criminal contempt of court charge from July 2017. Again, the Court cannot discern from the briefing whether this was a

conviction or merely an arrest. Due to the paucity of information, the Court will refrain from ruling on admissibility at this time.

In sum, the Court will grant in part and deny in part Plaintiff's Motion in Limine as set out above, with the understanding that this is a provisional ruling. At this early stage, the probative value of most of the disputed evidence appears substantially outweighed by the danger of unfair prejudice, but discovery should continue, and the Court will revisit the issue later if necessary.

## ORDER

**IT IS ORDERED that** Plaintiffs' Motion in Limine to Exclude John Hazell's Criminal Background and Prior Drug Use (Dkt. 47) is **GRANTED IN PART and DENIED IN PART** as described above.



DATED: July 16, 2025

B. Lynn Winmill
U.S. District Court Judge